### 75168. BLUM v. GENERAL MOTORS ACCEPTANCE CORPORATION et al.
(365 SE2d 474)

POPE, Judge.

In response to an advertisement published in the local newspaper, plaintiff Mark Robert Blum visited defendant Central Chevrolet, Inc. to shop for a Chevrolet Celebrity automobile. The advertisement listed a Celebrity for a base price of $6,997 plus other charges including options. The advertisement offered 7.7 annual percentage rate financing from "GM" or a forty-eight-month, closed-end lease at $108.31 per month plus options and other charges. Plaintiff obtained a price quotation of $11,626.61 on a certain automobile which included options and other charges. Plaintiff also obtained a proposed lease agreement, prepared by the dealership on behalf of defendant

General Motors Acceptance Corporation, on the same automobile for monthly payments of $260.66. One or two days later plaintiff returned to the dealership, executed the lease agreement and took delivery on the automobile. Some weeks later plaintiff became concerned that the lease payments were higher than he expected them to be. After performing mathematical calculations, plaintiff concluded that his lease payments were equivalent to finance payments of a higher rate than those offered in the advertisement. Plaintiff brought an action against the dealership and GMAC alleging common law fraud, violation of the Georgia Fair Business Practices Act of 1975, OCGA § 10-1-390 et seq., and violation of the federal Consumer Leasing Act, 15 USC §§ 1667-1667e. Plaintiff appeals from the grant of summary judgment to defendants.

1. Plaintiff's first two enumerations of error relate to whether the allegations of the complaint set forth a violation of the federal Consumer Leasing Act, 15 USC §§ 1667-1667e, or the applicable federal regulations which accompany that act. We find no violation is set forth in the complaint.

Essentially, plaintiff argues the lease agreement failed to make three disclosures mandated by Regulation M of the Truth in Lending Regulations, 12 CFR § 213.1 et seq. First, plaintiff claims the lease failed to disclose the value credited for a trade-in allowance as required by 12 CFR § 213.4 (g) (2). The pre-printed lease form used by defendants in this case included a line item for trade-in allowance which was marked "n.a.," presumably for "not applicable." This notation could not be a violation of the regulations since plaintiff admitted at deposition that he was allowed no credit for his trade-in vehicle because he held no equity in that vehicle.

Secondly, plaintiff argues the lease improperly failed to disclose the value of the automobile at the inception of the lease. Where the lessee's liability at the end of the lease term is based upon the estimated value of the leased property, the lease must disclose the value of the property at the consummation of the lease, the total obligation at the end of the lease and the difference between these two figures, 12 CFR § 213.4 (g) (15). By definition, this requirement applies only to any open-ended lease. "An open-end or finance lease is one in which the lessee's liability at the end of the lease term is based on the difference between the estimated value of the leased property and its realized value." Official Staff Commentary to Regulation M, 12 CFR Part 213, Supp. 1, Appendix C — Model Forms, par. 2. In the case at hand, liability for early termination of the lease is based on the difference between a designated residual value and the net proceeds of sale at wholesale. However, the lessee has no financial obligation whatsoever upon return of the vehicle in good condition at the end of the lease term. Therefore, this is a "closed-end" lease. See Official Staff

Commentary to Regulation M, supra at par. 3. Even the model closed-end lease provided in Regulation M does not include a line item for the initial value of the property. 12 CFR Part 213, Appendix C-2. By way of contrast, the model open-ended lease does include this item. 12 CFR, supra at Appendix C-1. The fact that the lease in question does not identify the initial value of the leased automobile does not constitute a violation of federal law.

Finally, plaintiff argues the lease violates federal law and the applicable regulations because it stipulates the use of wholesale value for calculating the lessee's liability for early termination of the lease but stipulates a presumably higher value (i.e., the average of the wholesale and retail value) for determining the price if the lessee elects to purchase at the end of the lease. By statute, the estimated residual value of the leased property must be a "reasonable approximation of the anticipated actual fair market value." 15 USC § 1667b (a). The term "fair market value" is not defined in the statute or the applicable regulations, although the legislative history of the Consumer Leasing Act of 1976 reveals an intention by the drafters to define the term as "the value the property would have when sold in a commercially reasonable manner in the customary market for such property." S. Rep. No. 94-590, 94th Cong., 2d Sess. 6, reprinted in (1976) U. S. Code Cong. & Ad. News 431, 436. We find nothing in the statute or regulations which would prevent the lessor of an automobile from stipulating wholesale as opposed to retail value for calculating the lessee's liability for early termination. In fact, the staff comments to the model closed-end lease clearly establish that the lessor may stipulate either wholesale or retail value for determining liability for early termination of the lease. 12 CFR Part 213, Appendix C-2, Instructions, Item 13. Neither the statute nor the applicable regulations require the lessor in a closed-end lease to use the same basis for calculating the residual value of the automobile at early termination as it uses for calculating the price of the automobile if the lessee elects to purchase at the expiration of the lease.[1]

2. Plaintiff's remaining enumerations of error relate to his allegations of fraud and violation of the Georgia Fair Business Practices Act. Essentially, plaintiff argues the advertisement in question was false and misleading. In effect, the advertisement made three separate offers: a base price for a Chevrolet Celebrity without options and

---

[1] Again, the disclosure requirements are different for a closed-end lease than for an open-end lease. The comments which accompany the open-end lease indicate the basis for calculating the residual value of the automobile at early termination of the lease (either wholesale or retail) should be identical to that used for calculating the price of the automobile if the lessee elects to purchase at expiration of the lease. 12 CFR Part 213, Appendix C-1, Instructions, Item 14.

other charges; a finance rate of 7.7 percent; or a forty-eight-month lease with monthly payments of $108.31 on the base price model, not counting options or other charges. The advertisement clearly stated that optional equipment and other charges would be added both to the base price and to the monthly lease payments. Plaintiff admits he ordered an automobile with optional equipment and that tax and other charges were added as part of his transaction. Nevertheless, plaintiff argues the advertisement implied the lease payments would be equivalent to 7.7 percent financing and that the increased monthly lease payments for an automobile with additional options would be directly proportionate to the advertised lease payment for a base price model. Although plaintiff may have misunderstood the distinction between the various offers made in the advertisement, we find no merit in the claim that the advertisement was misleading or deceptive.

First, the advertisement contains no representation that the lease will be offered at a rate of 7.7 percent. Plaintiff admitted he understood the difference between a financed sale and a lease. An automobile lease is not an automobile loan and therefore the monthly rental charge cannot be, and in this case was not, expressed as a finance rate. In fact, the advertisement clearly offered either the annual finance rate of 7.7 percent *or* a forty-eight-month lease.

Second, the advertisement contains no representation that the monthly lease payment for an automobile with different equipment will be directly proportionate to the monthly payment for the base price model. We note that the same advertisement contained an offer of a different model vehicle for the same base price but with a slightly greater monthly lease payment. It also contained an offer of another model with a base price $1,000 less than the Celebrity but with a greater monthly lease payment. Obviously, the lease payment, like the sales price, was dependent upon the particular automobile ordered by the customer. It was or should have been obvious to plaintiff that he ordered and received price quotations on a different automobile than that advertised in the newspaper. Plaintiff accepted the offer to lease the vehicle at a certain price and may not alter the terms of that contract because he now believes he made an unfavorable bargain.

*Judgment affirmed. Birdsong, C. J., and Deen, P. J., concur.*

DECIDED JANUARY 19, 1988 —
REHEARING DENIED FEBRUARY 2, 1988.

*Robert W. Scholz*, for appellant.
*John G. McCullough, Gregson T. Haan, Henry E. Scrudder, Jr.,*

*J. Wayne Pierce*, for appellees.